## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVAN MCKINNEY, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 19-12302 (FLW) (TJB) |
| | : | |
| v. | : | |
| | : | |
| TALIA RUBEL RYAN et al., | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Ivan McKinney ("Plaintiff"), a state prisoner presently incarcerated at New Jersey State Prison, in Trenton, New Jersey, filed *pro se* with the Court a Complaint alleging claims under 42 U.S.C. § 1983. The Court previously granted his application to proceed *in forma pauperis*. ECF Nos. 1 & 1-1. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff has sued Talia Rubel Ryan, Rebecca Santiago, William Leonard, Crystal Raupp, Steven Johnson, Suzanne Lawrence, Officer Mr. Hill, and Officer Diaz in connection with his removal from an RHU activity group[1] at New Jersey State Prison on June 5, 2017. Plaintiff has

---

[1] The Restorative Housing Unit ("R.H.U.") is a close custody unit, and according to regulation the R.H.U. "shall provide a structured, controlled environment where inmate behavior shall be closely monitored and documented by a team of custody and civilian staff." N.J.A.C. 10A:5-9.2. An inmate may be placed in the R.H.U. for committing a serious infraction or for less serious but repeated infractions. *See* N.J.A.C. 10A:5–9.1.

filed a fifteen-page Complaint, along with a twenty-five page Exhibit, which includes reports prepared by Defendants and Plaintiff's grievances prior to and about the incident.[2]

Leading up to his removal from the R.H.U. group meeting, Plaintiff alleges that on April 21, 2017, and May 3, 2017, he filed a grievance to Defendant Raupp, who manages the social workers at New Jersey State Prison.  In the grievance, Plaintiff stated that the social workers on the floor were not seeing him.[3]  *See* Complaint at 12.  On April 19, 2017, Plaintiff allegedly wrote to Defendant Johnson about that the fact that Defendant Hill, Diaz, Ryan, and Santiago were "abusing [him]."  Although Plaintiff provides no facts in his Complaint that would amount to "abuse" by these Defendants, he alleges later in the Complaint that Defendants Hill and Diaz "purposely" failed to pick him up from his tier when he was scheduled for religious and therapeutic classes, and Defendant wrote a grievance to Johnson about this issue on April 19, 2017.  *Id.* at 11.  Diaz also allegedly told Plaintiff "I will get you."[4]  *Id.*  Plaintiff also alleges that  on May 24, 2017, he wrote a grievance to Defendants Raupp and Leonard, a supervisory

---

[2] The Complaint itself is confusing and somewhat disjointed, and the Court construes the Complaint liberally and also considers the Exhibit to fill in the gaps.

[3] Plaintiff appears to be referring to grievances he filed in April and May 2017, which are attached in the Exhibit to his Complaint.  On April 17, 2017, Plaintiff filed a grievance, in which he stated the following:

> Ms. Rapp, I feel like i'm [sic] being dodged by this department. I
> have a high degree of respect for you and a great few of your team,
> but if im [sic] continued to be neglected, I  will add this department
> in my compaint [sic] to the court. And to the trentonian.

*Id.* at 10.  Defendant Raupp responded: "Please be specific as to the nature of your request." *Id.* Plaintiff filed another grievance on May 3, 2017, claiming that the prison social worker "is being prohibited from conducting business on 10 tier" and that he is "being denied equal protection of the law by not being able to see a social worker everyday like other unit."  Raupp responded and asked Plaintiff what he would like the social worker to provide at this time. *See id.* at 11.  No social workers are identified by name in these grievances.

[4] The context for Diaz's statement is not clear.

social worker, stating that social workers Ryan and Santiago might retaliate against him because he told them both that "you play both sides administration and prisoners." *Id.* at 12.

Subsequently, on June 5, 2017, Ryan and Santiago were leading the RHU activity group. Complaint at 13; Exhibit at 3. The group's topic was "What is your Intention" and the prisoners were "opening up about relationships and etc." *Id.* at 13. According to the Complaint, Ryan and Santiago allegedly attempted to limit Plaintiff's speech and did not attempt to limit the other inmates' speech. *See id.* Plaintiff characterizes the restriction as a violation of his First Amendment and equal protection rights. *Id.* at 13. The Complaint does not mention the content of Plaintiff's statements during the meeting on June 5, 2017.

Plaintiff's Exhibit, however, includes Special Custody Reports about Plaintiff's removal from the group on June 5, 2017.[5] *See* Exhibit at 3-7. Defendants Ryan and Santiago's Reports about the incident are included in the Exhibit. Defendant Ryan's Report summarizes the incident as follows:

> On 6/5/2017, Mr. McKinney was present for RHU activity scheduled from 10:00-11:00AM. The group topic selected was: What is your intention? When Mr. McKinney raised his hand to contribute, he stated that his intentions were "lust", and "the thrill of the chase". He described a letter he had written to his attorney, a woman who he is interested in who is married. He stated that at the end of the letter he wrote that he loved "eating strawberries, chocolate syrup, and because he has jungle fever he likes eating whiting fish and vanilla ice-cream". When redirected for innuendo, Mr. McKinney stated that he was allowed to talk as per his first amendment [sic] rights, that he was speaking to the men in the group, and that they knew what he meant. I stated that we also knew what he meant and that it was inappropriate [sic]. Moments later, when I was addressing another inmate's question, I stated that while inmates were able to support their loved ones[] emotionally, yet not physically, Mr. Mckinney interrupted stating

---

[5] Defendant Ryan's Special Custody Report also indicates that Defendant Leonard, the immediate supervisor, approved the request to remove McKinney from the group and notified Defendant Raupp. *See* Exhibit at 4.

> that he found my statement offensive and inappropriate [sic], Mr.
> Mckinney stated that he would no longer attend program, and that
> he intended to sue us for infringing on his first amendment rights.
> He was addressed for being combative. Ms. Santiago suggested
> that he be removed from group for being disruptive. I agreed, and
> we left the group area to advise SCO Hill that we needed the
> inmate removed.[6]

Exhibit at 3.  In his Complaint, Plaintiff vaguely alleges he was "not inappropriate" and was

"seeking treatment[.]"  As noted above, Plaintiff does not provide any contrary facts in his

Complaint regarding what he did say in the group meeting on June 5, 2017, and he appears to

assume that all speech is protected by the First Amendment.

Plaintiff further alleges in his Complaint that Hill and Diaz acted "in concert" with

Defendants Santiago and Ryan to retaliate against him.  *Id.* at 11.  Plaintiff also alleges that

Defendant Leonard authorized his removal from the R.H.U. activity group based on a January

2017 grievance Plaintiff filed against Leonard after Plaintiff's sister passed away.  *Id.* at 5.

During this incident Leonard allegedly "stood by" as two corrections officers mistreated Plaintiff

while he was on the phone with his parents.  *See id.*  Similarly, Plaintiff alleges that Raupp

authorized Plaintiff's removal from the group due to the many grievances Plaintiff has filed

against the social workers.  *See id.* at 6.

According to the Complaint, Defendant Johnson, an administrator at New Jersey State

Prison, "knew or should have known" that Plaintiff was being targeted by the social workers, and

Plaintiff allegedly copied him on a grievance he filed in April 2017 about Defendants Ryan and

Santiago.  *Id.* at 7.  Defendant Johnson also allegedly knew that corrections officers Diaz and

Hills had refused to pick him up from his cell to attend group.  *Id.*  Similarly, Defendant

Lawrence is a regional supervisor of the social workers at New Jersey State Prison who allegedly

---

[6] Defendant Santiago's Special Custody Report is also attached to the Complaint and is
consistent with Defendant Ryan's Report. *See* Exhibit at 4.

knew Plaintiff "was having issues" with Defendant Santiago and Ryan because Plaintiff copied her on several grievances he filed. *Id.* at 9.

Plaintiff's belief that he was removed from the R.H.U. activity group for retaliatory reasons is reflected in his grievances about the incident. In his June 7, 2017 grievance, Plaintiff claimed his First Amendment rights were violated by his removal from the group. *See* Exhibit at 14. Plaintiff also claimed that Defendant Santiago acted in retaliation "for writing ms santiago [sic] up on 05-26-17" and for "writing ms ryan [sic] up for refusing to come on 10 tier a month or so ago[.]" Defendant Raupp responded and told Plaintiff he was removed from the group for his inappropriate behavior. *See id.* Defendant Raupp also informed Plaintiff that his "alleged write ups" of Ryan and Santiago played no part in the decision to remove him from the group. *See id.*

On June 8, 2017, Plaintiff filed another grievance about his removal from the RHU activity group. In this grievance, Plaintiff asserts that "Mr. Lenny" also had reason to retaliate against him because Plaintiff wrote up "Mr. Lenny" for allowing custody officers to treat Plaintiff poorly after the death of his sister. *See id.* at 15. In this grievance, Plaintiff also asserts that Defendant Santiago talks about her husband in the group, that Defendants Santiago and Ryan have both talked about the "baby-making process" in the group, and that inmates talk about their "mates" in the group. *See id.* Defendant Raupp wrote back, stating that the June 8 grievance is a duplicate of the June 7 grievance, and Plaintiff responded that he would sue Defendant Raupp for retaliation for labeling his grievance as a duplicate. *See id.*

Plaintiff also filed a notice of tort claim against the State of New Jersey. *See* Exhibit at 16-20.

The Court begins with Plaintiff's federal constitutional claims.  To state a claim under §

1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the

United States and that the alleged deprivation was committed or caused by a person acting under

color of state law.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011);

*see also West v. Atkins*, 487 U.S. 42, 48 (1988).  The Court construes Plaintiff to assert violations

of his First and Fourteenth Amendment rights.

Plaintiff appears to allege that he has an unfettered First Amendment rights to speak his

mind in the R.H.U. activity group.  It is well-established that a prisoner retains certain First

Amendment rights notwithstanding his incarceration.  *See, e.g., Pell v. Procunier*, 417 U.S. 817,

822 (1974). Nevertheless, "lawful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying

our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979) (quoting *Price v. Johnston*, 334

U.S. 266, 285 (1948)).  In the First Amendment context, a prisoner retains only those rights "that

are not inconsistent with his status as a prisoner or with the legitimate penological objectives of

the corrections system." *Pell*, 417 U.S. at 822. It is generally recognized that security, order, and

rehabilitation are legitimate penological objectives.  *E.g., Procunier v. Martinez*, 416 U.S. 396,

413–14 (1974).

Here, Plaintiff claims his speech was not inappropriate but provides no well-pleaded facts

about the content of his speech at the R.H.U. group meeting other than the summaries written by

Defendants Santiago and Ryan, which he attaches as an Exhibit to his Complaint.  The

Defendants' summaries recite Plaintiff's repeated vulgar/lewd comments during the R.H.U.

group meeting and state that Plaintiff became combative and threatened to sue them when they

instructed him to stop making the comments.  In the prison context, courts have found vulgar,

insulting, and/or threatening statements not to be protected speech for purposes of the First

Amendment.  *See Jackson v. Onondaga Cnty*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008)

(holding that profane or threatening language in addressing corrections staff is not protected

speech); *see also Heffley v. FCI Otisville*, 18-CV-1630 2018 WL 10228398, at *3 (S.D.N.Y. Oct.

1, 2018) (prisoner did not have First Amendment right to use slang language for male genitalia in

email to prison administrator).  Even in the non-prisoner context, the First Amendment does not

protect vulgar speech that is unrelated to any political viewpoint.  *See Bethel Sch. Dist. No. 403*

*v. Fraser*, 478 U.S. 675, 684–85 (1986) (holding that the First Amendment did not protect a

student's vulgar speech at a school assembly, which was unrelated to any political viewpoint).

Plaintiff's belief that he has a First Amendment right to speak at the R.H.U. group meetings

using lewd or combative language is not supported by law.  Thus, to the extent Plaintiff alleges

that this type of speech is protected by the First Amendment, the Court dismisses this claim

without prejudice as to all Defendants.

Plaintiff also asserts First Amendment retaliation claims against the Defendants arising

from his removal from the R.H.U. activity group.  Retaliation against a prisoner based on his

exercise of a constitutional right violates the First Amendment.  *See Bistrian v. Levi*, 696 F.3d

352, 376 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v.*

*Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir.

2000).  In order to state a prima facie case of First Amendment retaliation, a prisoner must assert

that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3)

the constitutionally protected conduct was "a substantial or motivating factor" for the adverse

action. *See Rauser v. Horn*, 241 F.3d at 333.  A prisoner's ability to file grievances and lawsuits

against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Mitchell v. Horn*, 318 F.3d at 530; *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  The Court considers whether Plaintiff has stated a First Amendment retaliation claim against any of the Defendants.

Plaintiff alleges that Defendants Santiago and Ryan removed him from the R.H.U. activity group because he previously told them they "play both sides" and because he filed grievances about them.  Hill and Diaz also allegedly participated in Plaintiff's removal from the Group because he filed grievances about their failure to bring him to religious and educational classes as scheduled.  He further alleges that Defendant Leonard approved his removal from the group based on a single grievance Plaintiff filed in January 2017, approximately five months before the incident.  Plaintiff additionally alleges that Defendant Raupp approved his removal from the R.H.U. activity group due to Plaintiff's grievances about the social workers she supervised.  Plaintiff contends that Defendants Johnson and Lawrence were aware of the alleged retaliation because he notified them by copying them on grievances he wrote about the other defendants.  There are numerous deficiencies in Plaintiff's First Amendment retaliation claims, as discussed below.

From the outset, the only protected conduct Plaintiff engaged in is the filing of grievances.  Thus, any claims that he was retaliated against for his statements in the R.H.U. activity group on June 5, 2017, or for his comments about "playing both sides" do not implicate his First Amendment rights and are not actionable.

Moreover, Plaintiff's allegations that the Defendants removed him, assisted in his removal, or approved his removal from the R.H.U. activity group on June 5, 2017, due to his filing of grievances is belied by the Special Custody Report(s) he attaches to his Complaint,

which plainly show that Santiago and Ryan sought his removal from the R.H.U. activity group,

and that Leonard and Raupp approved his removal from the R.H.U. activity group, because

Plaintiff made repeated lewd comments, and Santiago and Ryan could not deter him from

making such comments.  Indeed, the only facts before the Court show that Plaintiff made a

number of lewd comments about his female attorney during the R.H.U. activity group session,

and when Santiago and Ryan told him to stop using that type of innuendo, he accused them of

violating his First Amendment rights and stated he would sue them.  Plaintiff does not have a

First Amendment right to make lewd or combative comments over prison staff's objections, and,

although he believes these comments were not "inappropriate," his opinion, without more, is not

sufficient to state a claim for relief.  Indeed, Plaintiff's lewd comments and disruptive conduct

appear to be the obvious and sufficient non-retaliatory basis for his removal from the group, thus

defeating his First Amendment retaliation claims.

Plaintiff also does not provide sufficient facts for the Court to find that his removal from

the R.H.U. activity group on June 5, 2017, is sufficiently "adverse" to deter a reasonable person

from exercising his or her constitutional rights.  "'[G]overnment actions, which standing alone

do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial

part by a desire to punish an individual for exercise of a constitutional right.'"  *Allah v.*

*Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) (alteration in original) (finding that confinement

in administrative segregation which resulted in reduced access to phone calls, reduced access to

the commissary, reduced access to recreation, confinement in his cell for all but five hours per

week, denial of access to rehabilitative programs and, significantly, inadequate access to legal

research materials and assistance was sufficient to deter a person of ordinary firmness from

exercising his constitutional rights) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir.

1999)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (Plaintiff falsely charged with misconduct for filing of grievances is sufficiently adverse).  Plaintiff does not plead this element and provides no facts about why his removal from the R.H.U. activity group on June 5, 2017, is sufficiently "adverse" to deter a reasonable person from exercising his or her constitutional rights.  As such, Plaintiff fails to show that he suffered an adverse action sufficient to sustain a First Amendment retaliation claim.

Plaintiff also fails to show a sufficient causal connection between the various grievances he allegedly filed against Defendants, and the adverse action, i.e., his removal from the R.H.U. activity group on June 5, 2017.  Once a plaintiff has provided facts showing protected conduct and an adverse action, he must provide facts showing a causal link between the two.  *See Rauser*, 241 F.3d at 333. Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy that burden by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Watson*, 834 F.3d at 422; *see also Wilcox v. Martinez*, 858 F. App'x 477, 479 (3d Cir. 2021) (affirming dismissal of First Amendment retaliation claim where prisoner "did not plausibly allege a causal link between the exercise of his constitutional rights and the adverse action").

Although Plaintiff contends that he filed grievances about Santiago, Ryan, Hill, and Diaz in April and/or May, there are no well-pleaded facts showing that Santiago, Ryan, Hill, and Diaz were aware that Plaintiff filed grievances about them.[7]  The sole grievance Plaintiff filed about

---

[7] Plaintiff's bare allegations of conspiracy among about Santiago, Ryan, Hill, and Diaz are likewise too conclusory to state a plausible claim for relief.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970) ).  Under the notice-pleading standard, a complaint must include more than "conclusory

Leonard in January 2017, is too temporally remote from incident, occurring approximately five months prior to Plaintiff's removal from the activity group on June 5, 2017.

Plaintiff also contends that Defendants Johnson and Lawrence were on notice because Plaintiff sent them grievances or copies of grievances. It is well established, however, that the filing of a grievance is generally <u>not sufficient</u> to show the actual knowledge necessary for personal involvement. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988); nor is participation in the after-the fact review of a grievance enough to establish personal involvement, *see*, *e.g.*, *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *see also Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998) (stating prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

For all these reasons, Plaintiff fails to state a claim for First Amendment retaliation against any of the Defendants. The First Amendment retaliation claims are dismissed without

---

allegations of concerted action...." *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998). It must also contain <u>at least some facts</u> which could, if proven, permit a reasonable inference of a conspiracy to be drawn. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

prejudice for failure to state a claim for relief pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B).

In addition to his First Amendment claims, Plaintiff appears to assert a "class of one" Equal Protection claim about his removal from the R.H.U. activity group on June 5, 2017. Plaintiff alleges in passing that other inmates in the group were permitted to speak about their relationships or "mates" and Defendants Ryan and Santiago targeted only Plaintiff's speech.  To allege an equal protection claim under a class-of-one theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)); *see also Pearson v. Varano*, 656 F. App'x. 583, 584 (3d Cir. 2016).

Plaintiff fails to state a class of one equal protection claim because he has not provided sufficient facts that Defendants treated him differently from similarly situated inmates and that there was no rational basis for the difference in treatment.  Specifically, although other inmates spoke about their relationships or "mates," there are no well-pleaded facts showing that the inmates also repeatedly used offensive innuendo in the R.H.U. activity group meeting on June 5, 2017.  Moreover, absent well-pleaded facts to suggest otherwise, Plaintiff's use of lewd language and combative behavior provide an obvious rational basis for Plaintiff's removal from the group on June 5, 2017.  The Court therefore dismisses without prejudice the class of one equal protection claim pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B).

It is possible that Plaintiff seeks to bring state law tort claims in additional to his federal claims.  The "district court may decline to exercise supplemental jurisdiction over a claim if 'the

district court has dismissed all claims over which it has original jurisdiction." *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009). "If it appears that the federal claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6), then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Cito v. Bridgewater Twp. Police Dep't.*, 892 F.2d 23, 25–26 (3d Cir.1989).  Having dismissed the federal claims, the Court also denies supplemental jurisdiction over any potential state law claims.

In conclusion, the Court dismisses the Complaint in its entirety pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B), denies supplemental jurisdiction over any potential state law claims, and directs the Clerk to close this matter accordingly.  Not every perceived wrong by prison staff is of constitutional dimension, and the Court is very doubtful that Plaintiff can cure the many deficiencies in his First and Fourteenth Amendment claims. The Court will provide Plaintiff with 30 days to file an amended complaint and move to reopen this matter; however, Plaintiff should not file an amended complaint or seek to reopen this matter unless he can provide sufficient facts to cure the numerous deficiencies in his federal claims for relief, as described in this Memorandum Opinion.  An appropriate Order follows.


/s/ Freda L. Wolfson
FREDA L. WOLFSON
U. S. Chief District Judge